# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MATTHEW YOUNGS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DraftKings Inc., Crown NJ Gaming Inc. d/b/a DraftKings, Resorts Atlantic City and DGMB Casino LLC,<br><br>Defendants. | Case No. 2:25-cv-00179-SRC-JRA |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

---

John M. Agnello, Esq.
James E. Cecchi, Esq.
Melissa E. Flax, Esq.
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Email: jagnello@carellabyrne.com
        jcecchi@carellabyrne.com
        mflax@carellabyrne.com

Richard R. Patch *(pro hac vice)*
Clifford E. Yin *(pro hac vice)*
Christopher J. Wiener *(pro hac vice)*
Sarah E. Peterson *(pro hac vice)*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: 415-391-4800
Facsimile: 415-989-1663
Email: ef-rrp@cpdb.com
        ef-cey@cpdb.com
        ef-cjw@cpdb.com
        ef-sep@cpdb.com

Attorneys for Defendants DraftKings Inc., Crown NJ Gaming Inc. d/b/a DraftKings, DGMB Casino LLC and Resorts Casino Hotel (improperly impleaded as Resorts Atlantic City)

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

FACTUAL ALLEGATIONS .......................................................................................3

LEGAL STANDARD..................................................................................................5

ARGUMENT ...............................................................................................................6

    I.      THE CFA CLAIMS (COUNTS 1, 2, 6 AND 7) AND THE
          INTENTIONAL MISREPRESENTATION CLAIM (COUNT 3) FAIL
          UNDER RULE 9(B). ......................................................................................6

          A.      Youngs Fails to Plead Unlawful or Deceptive Conduct, Including
                  Any Alleged Misrepresentations...............................................................7

          B.      Youngs Fails to Plead Reliance. ..............................................................12

          C.      Youngs Fails to Plead an Ascertainable Loss or Causation......................14

    II.     THE CFA CLAIMS (COUNTS 1, 2, 6 AND 7) ALSO FAIL FOR
          INDEPENDENT REASONS...........................................................................17

          A.      The CFA Claims Are Preempted by the CCA. .........................................17

          B.      The CFA Claims Do Not Involve the Sale or Advertisement of
                  "Merchandise" (Counts 1, 2, 6 and 7).....................................................21

          C.      Youngs Cannot Base a CFA Claim (Count 6) on the Vague Terms
                  "Risk-Free" and "No Sweat" Because Those Terms Are Puffery.............23

    III.    THE COURT SHOULD DISMISS ALL OTHER CLAIMS (COUNTS 4,
          5(A) AND 5(B)) FOR FAILURE TO STATE A CLAIM. ...............................24

          A.      The Court Should Dismiss the Negligence Claim (Count 4)....................24

                    1.      Youngs Does Not Allege a Cognizable Legal Duty of Care. ........24

                    2.      The Economic Loss Doctrine Precludes the Negligence
                          Claim................................................................................25

          B.      The Court Should Dismiss the Unjust Enrichment Claim
                  (Count 5(A))............................................................................................25

          C.      The Court Should Dismiss the Conversion Claim (Count 5(B)). .............26

    IV.    THE COURT SHOULD DISMISS DGMB AND RESORTS BECAUSE
          YOUNGS DOES NOT ALLEGE ANY CLAIM AGAINST THEM. .................27

    V.     YOUNGS DOES NOT HAVE STANDING TO ASSERT CLAIMS ON
          BEHALF OF A NATIONWIDE OR NON-NEW JERSEY CLASS...................28

    VI.    THE COURT SHOULD DENY LEAVE TO AMEND......................................29

CONCLUSION..........................................................................................................30

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*American Rubber & Metal Hose Co. v. Strahman Valves, Inc.*,
No. 11-1279 (MLC), 2011 WL 3022243 (D.N.J. July 22, 2011) ...........................................26

*Antar v. Borgata Hotel Casino & Spa, LLC*,
No. CV 22-05785, 2024 WL 1672280 (D.N.J. Jan. 31, 2024) ...................................18, 19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................5

*Ayala v. Assured Lending Corp.*,
804 F. Supp. 2d 273 (D.N.J. 2011) ...................................................................................24, 25

*Barry v. N.J. State Highway Auth.*,
585 A.2d 420 (N.J. 1990) .........................................................................................................21

*Begley v. Bristol-Myers Squibb Co.*,
No. 06–6051 (FLW), 2009 WL 5216967 (D.N.J. Dec. 30, 2009) ...........................................12

*Calandrillo v. Godaddy.com, LLC*,
No. A-4136-13T4, 2015 WL 2456695 (N.J. Super. Ct. App. Div. May 26, 2015) .................25

*Campione v. Adamar of New Jersey, Inc.*,
714 A.2d 299 (N.J. 1998) .........................................................................................................18

*Cetel v. Kirwan Financial Grp., Inc.*,
460 F.3d 494 (3rd Cir. 2006) ...................................................................................................21

*Ciser v. Nestle Waters N. Am. Inc.*,
596 F. App'x 157 (3d Cir. 2015) ...............................................................................................7

*Craft v. BMW of North America, LLC*,
No. 2:24-cv-06826 (WJM), 2024 WL 5197080 (D.N.J. Dec. 23, 2024)................................28

*D'Agostino v. Goichberg*,
No. A-1350-23, 2024 WL 4778715 (N.J. Super. Ct. App. Div. Nov. 14, 2024)..............21, 22

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
232 F.3d 173 (3d Cir. 2000)..............................................................................................18, 19

*Faistl v. Energy Plus Holdings, LLC*,
No. 12-2879 (JLL), 2012 WL 3835815 (D.N.J. Sept. 4, 2012)...............................................23

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)......................................................................6

*Giercyk v. National Union Fire Ins. Co. of Pittsburgh*,
    No. 13-6272, 2015 WL 7871165 (D.N.J. Dec. 4, 2015)..........................................25

*Glass v. BMW of N. Am., LLC*,
    No. 10-5259 (ES), 2011 WL 6887721 (D.N.J. Dec. 29, 2011) .............................13

*Gordon v. Nice Systems, Inc.*,
    No. 18-2168 (ES) (CLW), 2020 WL 2316278 (D.N.J. May 11, 2020)..................27

*Harborview Cap. Partners, LLC v. Cross River Bank*,
    600 F. Supp. 3d 485 (D.N.J. 2022) ........................................................9

*Hassler v. Sovereign Bank*,
    644 F. Supp. 2d 509 (D.N.J. 2009) .........................................6, 7, 8, 11

*Hoffman v. Hampshire Labs, Inc.*,
    963 A (N.J. Super. Ct. App. Div. 2009)..................................................6

*Holst v. Oxman*,
    290 F. App'x 508 (3d Cir. 2008) ........................................................29

*Hughes v. Panasonic Consumer Elecs. Co.*,
    No. 10-846 (SDW), 2011 WL 2976839 (D.N.J. July 21, 2011) ...........................16

*Katserman v. Navahrutski*,
    No. 21-16531(SDW)(MAH), 2022 WL 3357900 (D.N.J. Aug. 15, 2022)..............26

*Lemelledo v. Beneficial Mgmt. Corp.*,
    150 N.J. 255 (1997) ....................................................................17

*Lum v. Bank of America*,
    361 F.3d 217 (3d Cir. 2004)..............................................................5

*Marcangelo v. Boardwalk Regency Corp.*,
    847 F. Supp. 1222 (D.C.N.J. 1994), *aff'd on other grounds*, 47 F.3d 88 (3d Cir. 1995) ........19

*McGuire v BMW of N. Am., LLC*,
    No. 13-7356 (JLL), 2014 WL 2566132 (D.N.J. June 6, 2014)........................25, 28

*Mladenov v. Wegmans Food Markets, Inc.*,
    124 F. Supp. 3d 360 (D.N.J. 2015) ......................................................12

*New Jersey Citizen Action v. Schering-Plough Corp.*,
    842 A.2d 174 (N.J. Super. Ct. App. Div. 2003).........................................23

*Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993)................................................................5, 8

*Perri v. Prestigious Homes, Inc.,*
    No. L-4169-08, 2012 WL 95564 (N.J. Super. Ct. App. Div. Jan. 13, 2012)...........................23

*Phoenix v. U.S. Home Corp.,*
    No. 14-1615, 2014 WL 5667555 (D.N.J. Nov. 3, 2014) ........................................23

*Polzo v. County of Essex,*
    960 A.2d 375 (N.J. 2008)...............................................................24

*In re Riddell Concussion Reduction Litig.,*
    77 F. Supp. 3d 422 (D.N.J. 2015) ......................................................12

*Robey v. Sparc Group LLC,*
    311 A.3d 463 (N.J. 2024)..........................................................14, 17

*Shtutman v. Carr.,*
    Dkt. Nos. A-1064-15T1, 2017 WL 4402045 (N.J. Super. Ct. App. Div. Oct. 4, 2017)..........23

*Snowdy v. Mercedes-Benz USA, LLC,*
    No. 23-1681 (ES) (AME), 2024 WL 1366446 (D.N.J. Apr. 1, 2024) ..............................28, 29

*Thiedemann v. Mercedes—Benz USA, LLC,*
    872 A.2d 783 (N.J. 2005)................................................................15

*Tijerina v. Volkswagen Grp. Of Am., Inc.,*
    No. 21-cv-18755 (BRM) (LDW), 2023 WL 6890996 (D.N.J. Oct. 19 2023)........................28

*Townsend v. Pierre,*
    110 A.3d 52 (N.J. 2015)................................................................24

*Vita v. Vita,*
    No. 21-11060 (SRC), 2022 WL 376764 (D.N.J. Feb. 8, 2022)...............................26

**Statutes & Rules**

Federal Rule of Civil Procedure 9(b)...............................................2, 6, 12, 13

Federal Rule of Civil Procedure 12(b)(6) .............................................5, 29

N.J.S.A. 5:12-76............................................................................21

N.J.S.A. 56:8-1(c) .........................................................................21

N.J.S.A. 56:8-2.............................................................................21

N.J.S.A. 56:8-19...........................................................................15, 17

**Other Authorities**

N.J.A.C. 5:12-1 *et seq.* ....................................................................................................17

N.J.A.C. 13:69A-9.4(c)(5)-(6) ..........................................................................................19

N.J.A.C. 13:69G-2.2 ..........................................................................................................19

N.J.A.C. 13:69O-1.2 ..........................................................................................................17

N.J.A.C. 13:69O-1.2(x) ......................................................................................................19

N.J.A.C. 13:69O-1.2(j) ..................................................................................................19, 21

N.J.A.C. 13:69O-1.2(z) ......................................................................................................19

N.J.A.C. 13:69O-1.5(k) ......................................................................................................21

N.J.A.C. 13:69O-1.9(l) ......................................................................................................19

N.J.A.C 13:69O-1.12(a) ....................................................................................................18

N.J.A.C 13:69O-1.12(a)(4) ................................................................................................20

## INTRODUCTION

Plaintiff Matthew Youngs' ("Youngs") Class Action Complaint ("Complaint") fails as a matter of law and must be dismissed. Youngs alleges that advertisements for three of DraftKings Inc.'s ("DraftKings") promotions — (i) a Casino Deposit Promotion ("Casino Promotion"); (ii) a "No Sweat" Promotion (previously "Risk Free Promotion") (collectively, "No Sweat Promotion"); and (iii) a New Customer Bonus Promotion for 1,000 site credits ("New Customer Promotion") (collectively, the "Promotions") — were deceptive. Youngs, however, fails to allege: (i) which advertisements he allegedly viewed and relied on, (ii) how he was deceived by DraftKings, (iii) an ascertainable loss, and (iv) causation. Moreover, DraftKings disclosed the terms and conditions for each Promotion to Youngs, and Youngs does not allege that anything was missing from those terms and conditions or that they were false or deceptive. The disclosure of the Promotions' terms and conditions in clear and plain language is fatal to Youngs' claims. *DraftKings did not misrepresent or conceal anything*.

Each of Youngs' claims against DraftKings and Crown NJ Gaming Inc. d/b/a DraftKings (collectively referred to as "DraftKings" for the purpose of this Motion)[1]–(i) violation of the New Jersey Consumer Fraud Act ("CFA") concerning the Casino Promotion (Counts 1 and 2); (ii) violation of the CFA concerning the No Sweat Promotion (Count 6); (iii) violation of the CFA concerning the New Customer Promotion (Count 7); (iv) intentional misrepresentation concerning the Casino Promotion (Count 3); (v) negligence concerning the Casino Promotion (Count 4); (vi) unjust enrichment concerning the Casino Promotion (Count 5(A)); and (vii) conversion relating to

---

[1] Although mentioned in the case caption, Youngs does not bring any claims against DGMB Casino LLC ("DGMB") or Resorts Casino Hotel ("Resorts"). As such, those two defendants should be dismissed.

the Casino Promotion (Count 5(B))[2]–fails as a matter of law.

1.    The CFA Claims (Counts 1, 2, 6, and 7) and the Fraud Claim (Count 3) Fail Under Federal Rule of Civil Procedure Rule 9(b):

- Youngs has not pled, let alone with the particularity required by Rule 9(b), that DraftKings engaged in unlawful or deceptive conduct with regard to *any* of the Promotions;

- Youngs has not pled, let alone with the particularity required by Rule 9(b), reliance on any specific advertisement that he viewed or relied on prior to entering into the Promotions; and

- Youngs has not pled, let alone with the particularity required by Rule 9(b), that he suffered any ascertainable loss or causation.

2.    The CFA Claims (Counts 1, 2, 6, and 7) Should Be Dismissed for Three Additional Reasons:

- The CFA claims are preempted by the Casino Control Act (the "CCA"), which grants exclusive regulatory authority over the issues raised by Youngs' claims to the New Jersey Casino Control Commission ("CCC") and the Division of Gaming Enforcement ("DGE");

- The CFA does not apply because the Promotions do not involve the sale of "merchandise" as required by the statute; and

- Youngs alleges that the specific terms "Risk Free" and "No Sweat" are false and misleading, but those terms are vague non-actionable puffery under the CFA (Count 6).

3.    All Other Remaining Claims (Counts 4, 5(A), and 5(B)) Should be Dismissed:

- *Negligence (Count 4)*: Among other things, Youngs has not pled a legally cognizable duty

---

[2] Youngs' conversion claim appears as the second "Fifth Cause of Action." Thus, his unjust enrichment claim will be referred to as Count 5(A) and the conversion claim as Count 5(B).

in tort, nor does any such duty exist. Further, Youngs seeks purely economic damages, which is impermissible under the economic loss rule;

- *Unjust Enrichment (Count 5(A))*: Youngs bases his unjust enrichment claim in tort, which is improper under New Jersey law; and

- *Conversion (Count 5(B))*: This claim does not seek recovery of specific, identifiable, or segregated funds, as required to state a claim for conversion.

4.    The Complaint Contains Other Procedural Deficiencies:

- Youngs does not state a claim against DGMB or Resorts; and

- Youngs does not have standing to assert claims on behalf of a nationwide class;[3]

For these reasons, among others set forth herein, the Court should dismiss the Complaint with prejudice.

## FACTUAL ALLEGATIONS

Youngs is a resident of New Jersey, has been a DraftKings customer since 2016, and has engaged in sports betting and online casino gaming on the DraftKings platform since these services became available in New Jersey. Compl. ¶ 37.

The Complaint concerns three Promotions:

(1) <u>The New Customer Promotion</u>. This promotion offers a bonus up to $1,000 in site credits to new DraftKings Online Sportsbook ("DK Sportsbook") customers who meet certain conditions. Among other things, the new customer must deposit funds into their DraftKings

---

[3] Youngs is one of several plaintiffs represented by a law firm (Loevy & Loevy) that filed nearly identical purported nationwide class actions, including the instant one (on January 7, 2025), all purporting to represent the same class with nearly identical claims against DraftKings within a three-week window in four different fora: New Jersey, as well as Illinois, Kentucky and New York: *Beyer et al. v. DraftKings Inc.*, No. 1:25-cv-00003-DJH (W.D. Ky. Jan. 7, 2025); *Beyer et al. v. DraftKings Inc.*, No. 1:25-cv-01336 (N.D. Ill. Feb. 6, 2025); and *DeLeon et al. v. DraftKings Inc.*, No. 1:25-cv-00644-DLC (S.D.N.Y. Jan. 22, 2025) (together, the "Loevy Class Actions").

account and place the required type, number and amount of bets within 90 days of first signing up for a DK Sportsbook account. *See* Compl. ¶¶ 184, 192, 202.

Youngs alleges that, "[a]round 2018, when DraftKings' online sportsbook became available in New Jersey," he "saw ads for new sportsbook user promotions including a deposit match promotion on a variety of digital platforms" and "took the opportunity to begin sports betting." *Id*. ¶ 210. His Complaint does not include any of the text of the promotions he allegedly saw in or around 2018. Instead, he alleges that DraftKings advertised the New Customer Promotion since "at least 2020," and includes screenshots of two Twitter posts from 2022 and an undated screenshot purporting to be from a third advertisement. *Id*. ¶¶ 185, 194, Figs. 11-13.

(2) <u>The No Sweat Promotion</u>. This promotion offers a bonus bet to a customer who opts into the promotion, deposits a certain amount of funds, and then places a bet on DK Sportsbook. If such bet loses, DraftKings provides the customer with a bonus bet equal to the amount of the bet that lost, thereby providing the customer with an opportunity to place a second bet in the same amount as the lost bet. *Id*. ¶¶ 157, 158, Fig. 9.

At some unspecified time, DraftKings allegedly offered Youngs one or more No Sweat Promotions. *Id*. ¶¶ 213, 214. Although Youngs copies advertisements for several such promotions into the Complaint, he does not allege that he viewed or relied upon those advertisements.

(3) <u>The Casino Promotion</u>. This promotion offers a certain amount of bonus funds that can be used to place additional bets ("Bonus Funds") to a customer who opts into the promotion, deposits funds into their DraftKings account, and meets applicable playthrough requirements (the "Playthrough Requirements") at DraftKings' online casino ("DK Casino"). Upon meeting those requirements, the Bonus Funds can then be used to make additional casino bets. *Id*. ¶ 217.

Youngs alleges that promotional offers for DK Casino were emailed to him in late 2022.

*Id.* ¶ 217. He includes partial screenshots purporting to be emails from DraftKings, but he does not allege which emails he saw or which, if any, caused him to enroll in a Casino Promotion. Compl. ¶ 221, Figs. 14-17.

Youngs alleges that he opted into the Casino Promotion multiple times but did not understand the terms. *Id.* ¶ 222. According to Youngs, he alleges that the "first few times" he opted into the Casino Promotion, he purportedly did not realize that he was required to meet the Playthrough Requirements or he would lose both his winnings and what he initially deposited and wagered in connection with this promotion. *Id.* ¶¶ 222, 223. He alleges that all the money he deposited when he enrolled into the Casino Promotion was allegedly removed from his account after seven days. *Id.* ¶ 223. However, he admits that he continued to opt into other Casino Promotions and make additional deposits, and continued to attempt to complete the Playthrough Requirements, even after he fully understood the terms. *Id.* ¶ 224.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Court may "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citation omitted). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guaranty Corp. v. White Consol.*

*Indus.*, *Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## ARGUMENT

### I.    THE CFA CLAIMS (COUNTS 1, 2, 6 AND 7) AND THE INTENTIONAL MISREPRESENTATION CLAIM (COUNT 3) FAIL UNDER RULE 9(B).

Youngs has not adequately alleged the elements of a CFA claim or an intentional misrepresentation claim, let alone with the requisite particularity under Rule 9(b). Rule 9(b) imposes a heightened pleading standard where, as here, fraud is an element of the claim. This heightened pleading standard applies to both CFA and common law fraud claims. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id*. Failure to plead a CFA claim with the requisite particularity warrants dismissal. *See Hoffman v. Hampshire Labs, Inc.*, 963 A,2d 849, 854 (N.J. Super. Ct. App. Div. 2009).

To state a *prima facie* claim under the CFA, a plaintiff must allege: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D.N.J. 2009). To plead a fraud claim under New Jersey law, Youngs must similarly allege "(1) material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico*, 507 F.3d at 200.

Youngs has not alleged these elements for *any* of the Promotions, and certainly has not done so with the requisite particularity required by Rule 9(b). His CFA claims therefore must be dismissed.

A.    **Youngs Fails to Plead Unlawful or Deceptive Conduct, Including Any Alleged Misrepresentations.**

Youngs has failed to plead unlawful conduct as to any of the Promotions. Youngs' CFA claims related to the Promotions are based upon allegedly incomplete or misleading disclosures, but the terms of each of the Promotions "contain the very information that Plaintiffs allege was misrepresented, suppressed, or concealed." *Hassler*, 644 F. Supp. 2d at 514-15 (citation omitted). "[T]he CFA requires *some element of deceptive conduct*, explicit or implicit, to be actionable as an unconscionable practice." *Ciser v. Nestle Waters N. Am. Inc.,* 596 F. App'x 157, 161-62 (3d Cir. 2015) (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)) (emphasis added). A "*capacity to mislead* is the prime ingredient of all types of consumer fraud." *Id.* at 161 (quoting *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977)) (emphasis added). But none of the Promotions has any capacity to mislead because in each instance, the terms of the Promotions were explicitly disclosed–accurately, clearly, and repeatedly–including disclosure of everything that Youngs alleges in the Complaint was hidden or unclear. There was no deception, and Youngs has not come close to meeting his pleading obligations.

The Casino Promotion: Youngs alleges that the Casino Promotion violates the CFA because the advertisements for this promotion: (i) omitted "any warning regarding the large play-through requirements for the bonus promotion or any mention of the risk that a consumer's initial deposit would be forfeited if they began but did not complete the promotion" (Compl. ¶¶ 259, 262); and (ii) falsely represented that "consumers were likely to receive a cash-value match of their deposit of as much as $2,000[.]" *Id.* ¶ 261. He relies on partial screenshots (and omits the remainder of the promotional text) purporting to be from three promotional emails. *Id.* ¶ 221, Fig. 15 (June 2023), Fig. 16 (July 2024), and Fig. 17 (December 2023).

Youngs fails to allege that statements in the advertisements for the Casino Promotion were

7

false or misleading. By his own admission, the advertisements for the Casino Promotion fully disclose everything he claims was misleading or missing. He alleges that the provision that "casino games contributed to the playthrough requirement[s] at varying rates and that the most favorable games contributed only marginally to the playthrough" was "in the terms for the promotion." Compl. ¶ 102. He admits that the Casino Promotion terms and conditions contained the following disclosure:

> Failure to complete the play-through requirement, defined below, of the Original Deposit and Casino Bonus Funds within seven (7) days (the "Play-through Period") of the Casino Bonus Funds being credited to your account will void the award. This will result in forfeiture of any wagered and lost portion of the Original Deposit, Casino Bonus Funds and any accumulated winnings.

*Id.* ¶ 105.

Youngs instead complains that DraftKings' disclosures were "hard-to-understand" and "hidden deep in the terms of the promotion."[4] *Id.* ¶¶ 102, 103. But he intentionally included only a cropped version of the advertisements that cut off the language containing the promotion's terms and conditions. The *full* text of the promotional emails received by Youngs disclosed–in plain language and in a readable font size–*all* of the information that Youngs claims was concealed[5]: (i)

---

[4] Youngs appears to be dissatisfied with the Casino Promotion because its terms differed from the terms of unidentified DK Sportsbook deposit bonus offers in which he had previously participated. Compl. ¶¶ 109-10, 222. However, even ignoring the fact that Youngs does not provide sufficient detail about the alleged DK Sportsbook offers, "[m]ere customer dissatisfaction does not constitute consumer fraud." *Hassler*, 644 F. Supp. 2d at 514-15, *aff'd*, 374 F. App'x 341 (3d Cir. 2010) (citation omitted).

[5] Youngs only includes partial screenshots of the promotional emails in his Complaint. Compl. ¶ 221, Figs. 15-17. The Declaration of Veronica Hamel (filed herewith) ("Hamel Decl.") includes the full text of the promotional emails. The Court may consider the *full* text of them; the Court may consider "an undisputedly authentic document that a defendant attaches . . . to [its] motion to dismiss if the plaintiff's claims are based on th[at] document." *Pension Benefit Guaranty Corp. v. White Consol. Indus, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). That is especially true since the promotional terms "constitute much of the factual underpinning" of, and are central to, Youngs'

the required Playthrough Requirements; (ii) the consequences of not fulfilling the Playthrough

Requirements; and (iii) the nature of the Bonus Funds received as part of the promotion. Hamel

Decl., Exs. 1-3:

| Text of June 2023 Promotion (Fig. 15, [Ex. 1]) | Text of December 2023 Promotion (Fig. 17, [Ex. 2]) | Text of July 2024 Promotion (Fig. 16, [Ex. 3]) |
|---|---|---|
| *(1) Play-through Requirements* | | |
| Under "How to Claim Your Offer": "Original deposit amount plus the bonus amount are subject to a 15x play-through requirement . . . ."<br><br>Under "Additional Info": "Original deposit amount plus the Casino Bonus Funds amount are subject to a 15x play-through requirement . . . ." | Under "How to Claim Your Offer": "There is a PTR (play-through requirement) of 10x."<br><br>Under "Additional Info": "Original deposit amount plus the Casino Bonus Funds amount are subject to a 10x play-through requirement . . . ." | Under headline: "10x Play-Through Required . . . Play Through Required. There is a PTR (play-through requirement) of 10x."<br><br>Under "Offer Details": "Play-Through Requirements": "Casino Bonus Funds reward requires 10x play-through . . . ."<br><br>Under "Additional Info": "Casino Bonus Funds rewards requires customers to complete a 10x play-through requirement . . . ." |
| *(2) Consequences of failure to complete the Playthrough Requirements* | | |
| Under "Additional Info": "IF THE PLAY-THROUGH REQUIREMENT IS NOT MET, ANY WINNINGS, BONUS FUNDS AND LOST WAGERED PORTION OF THE ORIGINAL DEPOSIT WILL EXPIRE AND BE FORFEITED . . . Forfeiture of the bonus will result in the loss of any wagered lost portion of the original deposit, any remaining bonus funds | Under "Additional Info": "IF THE PLAY-THROUGH REQUIREMENT IS NOT MET, ANY WINNINGS, BONUS FUNDS AND LOST WAGERED PORTION OF THE ORIGINAL DEPOSIT WILL EXPIRE AND BE FORFEITED . . . ." | Under "Offer Details": "Failure to complete the play-through will result in forfeiture of the reward."<br><br>Under "Additional Info": "IF THE PLAY-THROUGH REQUIREMENT IS NOT MET, CASINO BONUS FUNDS AND ASSOCIATED WINNINGS WILL EXPIRE AND BE FORFEITED . . . ." |

allegations. *Harborview Cap. Partners, LLC v. Cross River Bank*, 600 F. Supp. 3d 485, 489 (D.N.J. 2022).

| Text of June 2023 Promotion (Fig. 15, [Ex. 1]) | Text of December 2023 Promotion (Fig. 17, [Ex. 2]) | Text of July 2024 Promotion (Fig. 16, [Ex. 3]) |
|---|---|---|
| and any winnings tied to this bonus promotion." | | |
| ***(3) Nature of bonus reward and likelihood of obtaining Bonus Funds*** | | |
| Under "How to Claim Your Offer": "Earn a 100% Casino Deposit Bonus up to $2,000 in Casino Bonus Funds."<br><br>Under "Additional Info": "in order to complete the promotion, the player must play-through a total of a minimum of $60,000 at a 100% contribution rate . . . or a maximum of $600,000 at a 10% contribution rate." | Under "How to Claim Your Offer": "a 100% Casino Deposit Bonus up to $5,000 in Casino Bonus Funds . . . ."<br><br>Under "Additional Info": "the customer would need to deposit $3,000 . . . to be awarded the maximum deposit match in Casino Bonus Funds . . . The customer would then have to wager . . . 15 times through during . . . [the] Play-Through of a minimum of $67,5000 . . . or a maximum of $675,000 . . . ." | Under "Offer Details": "100% Casino Deposit Match Bonus up to $2,000 in Casino Bonus Funds . . . To receive the maximum bonus, customer must play-through a minimum cumulative total of $20,000 . . . ."<br><br>Under "Additional Info": Providing an example offer of "A 100% deposit match up to $2,000 in Casino Bonus Funds with a 10x play-through over 7 days (168 hours). Customer deposits $100. The customer will receive $100 in Casino Bonus Funds" and then walks through each step of the required playthrough requirements |

In short, his own allegations and emails incorporated into his Complaint show that nothing was misrepresented or concealed. The CFA claims and the intentional misrepresentation claim should be dismissed as a matter of law.[6]

    The No Sweat And New Customer Promotions: Like the Casino Promotion, Youngs' CFA

---

[6] Youngs' own allegations also make clear he has not pled, and cannot plead, that DraftKings knew its representations were false when made. To the contrary, Youngs alleges that "[a]pparently, DraftKings thinks [that the forfeiture language of the Casino Promotion] establishes that, in the event a user fails to complete the playthrough within seven days or decides to opt out of the promotion after realizing it is impossible to satisfy, they stand to lose their entire original deposit and any money they have won wagering it–not just the promotion's bonus funds." Compl. ¶ 106. In other words, Youngs alleges that DraftKings believed that its representations were *true*, not false.

claims challenging the advertisements for the No Sweat and New Customer Promotions–as allegedly concealing material terms of those promotions–fail because none of those terms were concealed or misrepresented. Compl. ¶¶ 314, 330. Rather, the terms of the Promotions "contain the very information that [Plaintiff] allege[s] was misrepresented, suppressed, or concealed." *Hassler*, 644 F. Supp. 2d at 514-15 (citation omitted).

As to the No Sweat Promotion, Youngs includes a March 2024 advertisement for that promotion (Compl. ¶ 164, Fig. 5) that discloses the very terms Youngs complains were not disclosed. The advertisement states–immediately above "Bet Now"–that "if your first bet doesn't hit," get a "bonus bet back in the amount of your original wager." There is no statement that a new customer would receive "cash refunds," as he alleged. *Id*. ¶ 322. The advertisement further states: "Bonus bets expire 7 days (168 hours) after being awarded. Bonus bets must be wagered 1x before any resulting cash winnings can be withdrawn and stake is not included in winnings." *Id*. ¶ 164, Fig. 5. In other words, the precise issues Youngs complains about–the circumstances in which a customer would be eligible to receive a bonus bet, how long a customer could use that bonus bet, and the fact that the stake would not be included in winnings from wagering with that bonus bet– were all disclosed on the face of the advertisement itself.[7] *See id.*, Fig. 5.

With regard to the New Customer Promotion, he again does not allege any of the terms were misrepresented or hidden. Indeed, Youngs pleads the very terms of that Promotion: "[i]n

---

[7] Youngs also includes a screenshot of what he alleges are the "full terms" of a No Sweat Promotion from November 2024. Compl. ¶ 169, Fig. 9. These terms further disclose *everything* Youngs claims was misrepresented or hidden. They disclose (i) a customer "get[s] a bonus bet back if you lose;" (ii) bonus bets are <u>not</u> a refund of the cash wagered by the customer but are instead "single-use, non-transferable, non-withdrawable and have **no cash value**;" (emphasis added) and (iii) if a customer places a wager using a bonus bet and wins, the user will not receive their stake back: "Payouts from Bonus Bet wagers will be transferred to the customer's cash balance and do not include the Bonus Bet stake. Ex: if a $10 bonus bet is placed at +100 odds and wins, only the profit of $10 will be credited to the customer's account." *Id*. ¶ 169, Fig. 9.

order for a new user to obtain the '$1,000 Bonus,' he or she would have to satisfy three []
requirements," which included (i) depositing $5,000 up front; (ii) betting $25,000 within 90 days;
and (iii) betting that $25,000 on wagers with odds of "-300 or longer." Compl. ¶ 200. Crucially,
Youngs alleges that those requirements were "explained." *Id*.

### B.    Youngs Fails to Plead Reliance.

Under Rule 9(b), Youngs is required to plead reliance, including identifying the specific
advertisements upon which he allegedly relied. He has failed to do so.

A "scatter-shot pleading [that] list[s] examples of Defendants' marketing statements
without identifying which specific statement(s), if any, plaintiffs were exposed to" does not satisfy
Rule 9(b)'s particularity requirements. *In re Riddell Concussion Reduction Litig*., 77 F. Supp. 3d
422, 433 (D.N.J. 2015); *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 374
(D.N.J. 2015). When a complaint alleges several advertisements or promotional materials, courts
will dismiss CFA or fraud claims that "fail to identify which, if any, of the promotional or
marketing materials were received, viewed or relied upon by plaintiffs, and if they were, when
these materials were viewed and how they were relied upon." *Begley v. Bristol-Myers Squibb Co.*,
No. 06–6051 (FLW), 2009 WL 5216967, at *9 (D.N.J. Dec. 30, 2009).

Youngs' CFA claims (Counts 1 and 2) and his intentional misrepresentation claim (Count
3) challenging the Casino Promotion fail under Rule 9(b)'s heightened standard because he does
not plead what advertisements he saw or relied on. He includes "example" advertisements, but he
never alleges that he personally saw them or relied on the "example" advertisements in deciding
to take any action. *See* Compl. ¶¶ 91-92. Instead, he alleges that, at some undisclosed time, he
"began taking advantage of the Casino [Promotion] offers he was seeing on digital media and in
his email." *Id*. ¶ 219. Notably, he fails to allege the contents of those offers. While he alleges that
he "received" emails in June of 2023 (*Id*. ¶ 221, Fig. 15), December 2023 (*Id*., Fig. 17), and July

2024 (*Id*., Fig. 16), he never alleges that he saw or reviewed those emails, relied on them, or opted into any Casino Promotions based on them. Of particular importance, those emails are not uniform; they contain different representations, terms, and layouts. *See* Hamel Decl., Exs, 1-3. Such allegations plainly fail to satisfy the particularity requirement of Rule 9(b), and these claims fail as matter of law.

Youngs' CFA claims challenging the No Sweat and New Customer Promotions (Counts 6 and 7) fail for the same reasons. As to the No Sweat Promotion (Count 6), Youngs never alleges that *he* saw any of the advertisements he alleges were posted at sporting events, on highways, on social media, and in direct emails to customers; he simply cut and pasted screenshots from Twitter and the "DraftKings user interface." *See* Compl. ¶ 151, Fig. 3; ¶ 164, Fig. 5 & Fig. 7; and ¶ 168, Fig. 8. These four figures (Figures 3, 5, 7 and 8) are also included in *all* the other Loevy Class Action complaints, making clear the cookie-cutter nature of Youngs' allegations concerning these advertisements. This is insufficient to satisfy the heightened pleading requirements. *See Glass v. BMW of N. Am., LLC*, No. 10-5259 (ES), 2011 WL 6887721, at *7 (D.N.J. Dec. 29, 2011) ("Plaintiff cannot simply reference a statement on a website without providing the date when the statement was made or at what point—if ever—Plaintiff was exposed to that statement.").

Youngs also never alleges what specific advertisements he relied on with regard to the New Customer Promotion (Count 7). He alleges that "[a]round 2018, . . .[he] saw ads for new sportsbook user promotions including a deposit match promotion on a variety of digital platforms" and "took the opportunity to begin sports betting" (Compl. ¶ 210), but he fails to allege the terms of those alleged promotions. Most critically, Youngs never alleges that, when he was a new user, *DraftKings even offered or advertised the New Customer Promotion*. He alleges that he "already ha[d] an account on DraftKings" and "took the opportunity to begin sports betting" "[a]round

2018." *Id*. He does not allege he saw any advertisement for any "1,000 Sign Up Bonus" in 2018. Instead, he alleges that DraftKings "advertised their promises of a '1,000 Sign Up Bonus'" "[s]ince at least 2020." Compl. ¶ 185. There is no allegation DraftKings ever offered the New Customer Promotion in 2018.

Youngs' remaining threadbare allegations about what advertisements he saw concerning the New Customer Promotion are unavailing. He cites a litany of *post*-2018 advertisements, including advertisements for the signup bonus to "Kentuckians"[8] at professional sports events, on "Twitter, Instagram, Facebook and TikTok feeds," and "on billboards and public transportation in New Jersey", and screenshots from 2022 on Twitter. Compl. ¶¶ 185, 186, and 194, Figs. 11 & 13. None of these advertisements could have or did cause him to allegedly sign up as a new DK Sportsbook customer allegedly *four years earlier*.

Even taking Youngs' Complaint as true, he has utterly failed to allege what advertisements he relied upon with regard to each of the Promotions. His failure to do so, let alone with the required particularity, warrants dismissal.

### C.    Youngs Fails to Plead an Ascertainable Loss or Causation.

Youngs has failed to plead any ascertainable loss suffered as a result of DraftKings' alleged conduct.  Even to the extent he does allege loss, any loss he suffered was contemplated by, and in accordance with, the terms and conditions of the Promotions presented to him. His CFA claims therefore must fail.

A showing of ascertainable loss is required to sustain a claim under the CFA. *Robey v. Sparc Group LLC*, 311 A.3d 463, 467 (N.J. 2024). This element requires a "quantifiable or

---

[8] His lawyers seemingly neglected to change the allegations in this Complaint from the lawsuit they filed in Kentucky. Moreover, Figures 11 and 13 are also included in each of the other Loevy Class Action complaints.

measurable," and not merely "hypothetical" or "speculative," loss. *Thiedemann v. Mercedes— Benz USA, LLC*, 872 A.2d 783, 791-95 (N.J. 2005). To plead causation, Youngs must show that any ascertainable loss was suffered "as a result of" DraftKings' alleged unlawful conduct. N.J.S.A. 56:8-19; *Thiedemann* 872 A.2d at 791 (finding that plaintiff must demonstrate "a loss attributable to conduct made unlawful by the CFA"). Youngs has failed to do so for all of the Promotions.

The Casino Promotion: Youngs has not pled, nor can he plead, either an ascertainable loss or causation with regard to the Casino Promotion. Youngs alleges that, the first few times he opted into the promotion, he did not realize that, if he did not complete all of the Playthrough Requirements, he would lose what he wagered in connection with the Casino Promotion[9] and therefore "lost money when all of the money associated with the promotion was removed from his account after seven days." Compl. ¶ 223. As discussed in more detail in Section I.A *supra*, the terms of the Promotion were clearly disclosed to him, and DraftKings did not engage in any deception regarding the features of the Casino Promotion. In addition, Youngs admits that *after understanding the promotion terms*, he continued to make additional wagers in connection with the Casino Promotion. *Id.* ¶¶ 224-225 (emphasis added). His allegations render it impossible to determine when, precisely, Youngs' alleged losses stopped accruing. Indeed, the Complaint contains no information as to what amount he claims to be his "ascertainable loss." For example, while Youngs alleges that he lost $200,000 in 2024, he also alleges that he attempted to "win back" those losses. *Id.* ¶ 225. He fails to allege whether he actually won back those losses (or more) or whether any of these alleged losses were caused by the Casino Promotion.

Moreover, even if Youngs has "losses" from opting into Casino Promotions, he has not

_____

[9] Youngs never alleges why, after the first time he opted into the Casino Promotion, he did not realize how it worked, did not read its terms, or did not make any attempt to understand how the Promotion worked.

plausibly alleged that such losses (to the extent he sustained any) were caused by any unlawful conduct. Youngs admits that even after entering into the Casino Promotion the first time, he decided to enter into additional promotions, make more deposits, and place more bets. Those losses (if any) result from his fully-informed decision to continue to opt into additional Casino Promotions and not any alleged deceptive conduct by DraftKings.

The No Sweat And New Customer Promotions: With regard to the No Sweat and New Customer Promotions, Youngs has likewise failed to plead an ascertainable loss or causation. With regard to those Promotions, he alleges that, without the misrepresentations and omissions in those Promotions and their associated advertisements, he "would not have created accounts with DraftKings and/or would not have deposited as much money into their DraftKings accounts and/or placed bets on DraftKings' platform." Compl. ¶¶ 321, 339. As relief, Youngs seeks "monetary losses when [he] failed to receive cash refunds for bets that [he] placed and lost in reliance on" the No Sweat Promotion and "a cash deposit match for the funds [he] deposited" for the New Customer Promotion. *Id.* ¶¶ 322, 340.

Even in the light most favorable to Youngs, he does not allege an ascertainable loss. He is required to allege "either out-of-pocket loss or a demonstration of loss in value" in order to state a claim involving fraudulent misrepresentation. *Hughes v. Panasonic Consumer Elecs. Co.,* No. 10-846 (SDW), 2011 WL 2976839, at *15 (D.N.J. July 21, 2011). However, Youngs pleads neither. With respect to the New Customer Promotion, he never alleges he entered into that particular promotion, the amount of any deposit he made, or the "cash deposit match" he alleges he is entitled to recover. With respect to the No Sweat Promotion, he alleges only that he is entitled to a cash refund as a result of losing his first bet, but he never alleges that he lost that first bet, or the stake of that bet he claims is owed to him. It is unclear how Youngs quantifies his alleged loss and

whether he seeks, for example, the amount bet and lost, the cash-equivalent of a bonus bet or deposit match, or both. Youngs also does not explain how any winnings he may have received factor into his alleged loss calculations (*e.g.*, if he lost his first bet under the No Sweat Promotion but won his next bet using the bonus bet provided to him).

Notably, in addition to failing to plead his CFA claims, he has no standing to seek injunctive relief. Pleading ascertainable loss is a threshold standing requirement for a claim seeking injunctive relief under the CFA. N.J.S.A. 56:8-19; *Robey*, 311 A.3d 477–78 ("Because plaintiffs here cannot plead ascertainable loss, they cannot seek an injunction for themselves, or others similarly situated under the CFA."). Accordingly, Youngs does not have standing to obtain the injunctive relief he seeks regarding the No Sweat Promotion and New Customer Promotion. *See* Compl. ¶¶ 326, 344.

## II.    THE CFA CLAIMS (COUNTS 1, 2, 6 AND 7) ALSO FAIL FOR INDEPENDENT REASONS.

Even if they were properly pled–and they are not–the Court should dismiss with prejudice Youngs' CFA claims (Counts 1, 2, 6, and 7) for the following additional reasons: (A) the claims are preempted by the CCA; (B) none of the claims involve the sale or advertisement of "merchandise" as required by the CFA; and (C) the terms "Risk-Free" and "No Sweat" used in the No Sweat Promotion are too vague to be actionable under the CFA.

### A.    The CFA Claims Are Preempted by the CCA.

Youngs' CFA claims are preempted by the CCA. The CCA extensively regulates casinos and online gaming platforms such as DK Sportsbook and DK Casino. *See* N.J.A.C. 5:12-1 *et seq.*; N.J.A.C. 13:69O-1.2. The New Jersey Supreme Court has held that the CFA does not apply when "a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes." *Lemelledo v. Beneficial Mgmt. Corp.*, 150 N.J. 255, 270

(1997). More specifically, the CFA is preempted where there is another "source or sources of regulation [that] deal[s] specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes." *Id*. The CCA is precisely the type of regulation requiring dismissal of Youngs' CFA claims. *See Antar v. Borgata Hotel Casino & Spa, LLC*, No. CV 22-05785, 2024 WL 1672280, at *2–4 (D.N.J. Jan. 31, 2024) (dismissing CFA claim against online gaming platform as preempted by the CCA).

The CFA works at cross purposes with the CCA. The CFA is "concerned with the protection of *consumers"* whereas one of the CCA's purposes is "the protection of the financial viability of the casino industry." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 189 (3d Cir. 2000) (emphasis added). The CCA also "presupposes that the consumers as a group . . . will lose their money, a contemplated result that hardly is the object of the [CFA]." *Id*. In addition, the CCA specifically, concretely, and pervasively governs DraftKings' obligations with regard to the conduct alleged in the Complaint. "The [CCA] establishes an elaborate framework for regulating the casino industry," and its "statutory and regulatory controls cover 'virtually every facet of casino gambling and its potential impact upon the public.'" *Campione v. Adamar of New Jersey, Inc.*, 714 A.2d 299, 304 (N.J. 1998) (internal citation omitted).

The CCA vests in the Casino Control Commission "exclusive control of the regulation" of gaming and related advertising. *Doug Grant*, 232 F.3d at 188–89. As such, claims related to "gaming-related advertising" are preempted by the CFA. *Antar*, 2024 WL 1672280, at *3; N.J.A.C 13:69O-1.12(a) (requiring licensees to file the terms and conditions of "each Internet and mobile gaming promotion" with the DGE prior to implementation). New Jersey courts and the Third Circuit have repeatedly held that terms of promotions and advertisements for casino and other

gaming platforms remains in the exclusive purview of the CCA. *See, e.g.*, *Doug Grant*, 232 F.3d at 188–89 (holding that the CCA exclusively governs advertising that references specific aspects and rules of blackjack); *Marcangelo v. Boardwalk Regency Corp.*, 847 F. Supp. 1222, 1224–25 (D.C.N.J. 1994), *aff'd on other grounds*, 47 F.3d 88 (3d Cir. 1995) (finding plaintiff's suit preempted by CCA because slot machine signage referenced specific rule of the game).

Here, Youngs' CFA claims are premised entirely on gaming-related advertising and the terms and conditions for promotions related to online sportsbook and casino. As detailed below, such conduct is unquestionably subject to CAA regulations. Youngs makes the following allegations, among others, related to advertisements of the Promotions and the Promotions' terms and conditions:

- Count 1: Youngs alleges that the Casino Promotion's terms are unconscionable, and that: (i) customers may allegedly lose their deposit if they fail to meet the playthrough requirements (Compl. ¶¶ 241-44); (ii) it is intentionally designed to inculcate problem gaming"[10] (*Id.* ¶ 244); (iii) customers frequently opt into the Casino promotion

---

[10] Youngs makes conclusory allegations about problem gaming but does not *bring any cause of action specifically related to it*. In any case, CCA regulations govern problem gaming. N.J.A.C. 13:69O-1.2(x) (setting forth training requirements related to "problem gambling behavior"); *see also* N.J.A.C. 13:69A-9.4(c)(5)-(6) (requiring payment of fees to fund to treat and educate problem gamblers); N.J.A.C. 13:69O-1.2(j) (imposing internal controls requirements for reporting of problem gamblers); N.J.A.C. 13:69O-1.2(z) (requiring problem gamblers be notified of and provided resources on problem gambling); N.J.A.C. 13:69O-1.9(l) (requiring generation of weekly reports identifying potential problem gamblers); N.J.A.C. 13:69G-2.2 (establishing required process by which problem gamblers can place themselves on self-exclusion list).

Further, a recent decision by the District of New Jersey addressed precisely this interplay between the CFA and the CCA involving problem gaming, concluding that the CCA preempted a CFA claim brought against an online gaming platform. *Antar*, 2024 WL 1672280, at *3 (ruling that CFA claim related to compulsive gambling was preempted by the CFA because "CCA regulations deal pervasively with the responsibilities of casinos as they relate to compulsive gambling"). The court held that the CCA "would certainly work at cross-purposes with the CFA" if a casino operator could be liable for violations of the CFA premised on a failure to meet its responsible

inadvertently (*Id.* ¶ 245); and (iv) the Casino Promotion violates New Jersey state regulations for internet gaming and DGE-issued guidance (*Id.* ¶¶ 246-47).

- Count 2: Youngs alleges that the Casino Promotion's advertising (i) fails to include any "warnings regarding the large play-through requirements," (ii) fails to disclose the risk that a customer was supposedly unlikely "to receive a cash-value match of their deposit of as much as $2,000," and (iii) fails to disclose the "risk that a consumer's initial deposit would be forfeited if they began but did not complete the [Casino Promotion]." Compl. ¶¶ 261-62.

- Count 6: Youngs alleges that the No Sweat Promotion's advertisements fail to disclose: (i) that there is a risk to the customer of losing their own money (*Id.* ¶ 154); (ii) restrictions on withdrawal of funds (*Id.* ¶ 155); (iii) the order of funds wagering (*Id.* ¶¶ 158-60); and (iv) that the bonus bet will take the form of site credits instead of cash (*Id.* ¶¶ 157-58).

- Count 7: Finally, Youngs alleges that the New Customer Promotion advertisements fail to adequately warn customers of that promotion's playthrough requirement and a customer's "odds of winning," and allegedly failed to disclose that customers would receive site credit, rather than cash. Compl. ¶¶ 187, 189, 193, 332.

All these alleged actions are governed by CCA regulations and fall within the exclusive jurisdiction of the CCC and the DGE. Indeed, Youngs' allegations all relate to the terms of promotions that DraftKings is obligated to file with the DGE, including "each Internet and mobile gaming promotion." N.J.A.C 13:69O-1.12(a)(4); 1.12(a)(5); 1.12(a)(7)) (the terms to be filed

_____

gaming obligations, despite being in compliance with its responsible gaming obligations under the CCA. *See id.*

In short, under the CCA regulations and *Antar*, Youngs' allegations concerning purported problem gaming are preempted.

include, among other things: "[w]agering requirements and limitations by type of game," "[o]rder in which funds are used for wagers," and "[a]ny restrictions on the withdrawal of funds."). Further, whether the Casino Promotion violates New Jersey state regulations for internet gaming and DGE-issued guidance is governed by the CCA. N.J.S.A. 5:12-76. CCA regulations also address issues related to "inadvertent" game play. N.J.A.C. 13:69O-1.5(k) ("Game play shall be initiated only after a patron has affirmatively placed a wager and activated play."); N.J.A.C. 13:69O-1.2(j) (requiring the filing with the DGE of an operator's internal controls "for all aspects of Internet and mobile gaming operations").

Accordingly, the CFA claims (Counts 1, 2, 6, and 7) must be dismissed against DraftKings because they are preempted.

**B.      The CFA Claims Do Not Involve the Sale or Advertisement of "Merchandise" (Counts 1, 2, 6 and 7).**

Youngs' CFA claims (Counts 1, 2, 6, and 7) must be dismissed for the additional reason that they do not involve the sale or advertisement of "merchandise," as is required by the plain language of the statute and CFA jurisprudence.

"The CFA is not intended to cover every transaction that occurs in the marketplace." *Cetel v. Kirwan Financial Grp., Inc.*, 460 F.3d 494, 514 (3rd Cir. 2006) (internal citations omitted). The CFA applies to certain practices "in connection with the sale or advertisement of any merchandise or real estate." *See* N.J.S.A. 56:8-2. Under the CFA, the term "merchandise" includes "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]" N.J.S.A. 56:8-1(c). Courts dismiss CFA claims that are not based on the sale or advertisement of "merchandise." *See, e.g.*, *D'Agostino v. Goichberg*, No. A-1350-23, 2024 WL 4778715, at *4 (N.J. Super. Ct. App. Div. Nov. 14, 2024) (affirming dismissal of CFA claim because tournament prize money was not "merchandise") ; *Barry v. N.J. State Highway Auth.*, 585

A.2d 420, 424 (N.J. 1990) (sale of toll tokens or promotion of a discount did not involve sale of "merchandise" under CFA).

The services provided by DraftKings at the heart of Youngs' Complaint are not "merchandise." While Youngs makes conclusory allegations that "[t]he services and product[s] offered to Plaintiff Youngs and each member of the Class constitute[d] 'merchandise' as defined by N.J.S.A. 56:8-(c)," he only includes this conclusory allegation for Counts 1 and 2 without ever identifying what "services" or "products" he is purportedly referring to, and he does not make any allegations on this topic for Counts 6 and 7. Compl. ¶¶ 239, 256. Nor can he. None of the Promotions involve merchandise. In an analogous case, a New Jersey court ruled that hosting a tournament for prize money did not "constitute a service satisfying the CFA's definition of merchandise." *D'Agostino*, 2024 WL 4778715, at *4. In *D'Agostino*, a chess tournament participant brought a CFA claim based on an advertisement offering multiple prizes to participants, despite an alleged "hidden [and] undisclosed rule that a player can only receive one prize." *Id.* at *1 (alterations in original). The plaintiff alleged that he was entitled to additional prize money; after a bench trial, the trial court rejected the CFA claim because prize money did not "fit the definition of merchandise. So it's not consumer fraud." *Id.* at *2. The Appellate Division affirmed, holding the "awarded prize money was not merchandise to support a cognizable claim under the CFA." *Id.* at *5.

Similarly, the rewards offered by DraftKings to customers who satisfied the terms of the Promotions, and that are the subject of Youngs' CFA claims, do not constitute a "service" or other item "for sale" within the CFA's definition of "merchandise." As a result, Youngs has not pled the sale or advertisement of any merchandise, and his CFA claims should be dismissed.

C.    **Youngs Cannot Base a CFA Claim (Count 6) on the Vague Terms "Risk-Free" and "No Sweat" Because Those Terms Are Puffery.**

Young's CFA claim regarding the No Sweat Promotion (Count 6) fails for an additional reason. New Jersey courts distinguish between misrepresentations of fact, which can be actionable under the CFA, and puffery, which is not actionable. *See, e.g.*, *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003) (finding use of the phrase "you . . . can lead a normal nearly symptom-free life" in an advertisement was not a statement of fact, but merely an expression of puffery and not actionable under the CFA).

Youngs focuses on specific words used in the No Sweat Promotion, specifically, the words "risk-free" (which Youngs admits DraftKings no longer uses) and "no sweat." Those terms are vague non-actionable puffery. The statement "no sweat" is akin to statements that "there wasn't anything to be concerned with[,]" which have been held to be puffery and non-actionable. *Perri v. Prestigious Homes, Inc.*, No. L-4169-08, 2012 WL 95564, at *3 (N.J. Super. Ct. App. Div. Jan. 13, 2012); *Phoenix v. U.S. Home Corp.*, No. 14-1615, 2014 WL 5667555, at *5 (D.N.J. Nov. 3, 2014). The same is true for statements that a product or service is "without risk." *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879 (JLL), 2012 WL 3835815, at *1-2 (D.N.J. Sept. 4, 2012) (finding that marketing materials by energy provider that customers would "[e]njoy the same service without risk, fees or long-term commitment" could not provide the basis for a CFA claim because the relevant agreement provided that monthly rates would be "variable"); *Shtutman v. Carr.*, Dkt. Nos. A-1064-15T1, 2017 WL 4402045, at *5 (N.J. Super. Ct. App. Div. Oct. 4, 2017) ("Generally, asserting that an investment has low or no risk is a 'non-actionable vague expression of corporate optimism and puffery upon which no reasonable investor would rely." (internal citation omitted)).

Any representations by DraftKings using the vague terms "risk free" or "no sweat" represent pure puffery based on well-established case law. Youngs CFA claim thus fails.

## III.    THE COURT SHOULD DISMISS ALL OTHER CLAIMS (COUNTS 4, 5(A) AND 5(B)) FOR FAILURE TO STATE A CLAIM.

Youngs has also failed to plead claims for negligence, unjust enrichment, and conversion. The Court should dismiss those claims as well.

### A.    The Court Should Dismiss the Negligence Claim (Count 4).

Youngs premises his negligence claim on an alleged legal duty "to ensure that users of the DraftKings platform were made aware of the material terms of the [Casino Promotion] and did not inadvertently opt into the promotion without intending to." Compl. ¶ 285. The claim is subject to dismissal because (1) no such legal duty of care exists, and (2) the economic loss doctrine precludes it.

### 1.    Youngs Does Not Allege a Cognizable Legal Duty of Care.

Youngs' negligence claim fails because he has not and cannot plead a cognizable legal duty that DraftKings owed to him to ensure he understood the terms of the Promotions. No such duty exists, and in any event, Youngs' conclusory allegations are insufficient to plausibly allege such a duty.

To state a claim for negligence, Youngs must first plausibly allege the existence of "a duty of care." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (negligence claim requires "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." (internal quotation marks omitted)); *see also Polzo v. County of Essex*, 960 A.2d 375, 384 (N.J. 2008).

Youngs alleges in conclusory fashion that DraftKings owed him a "duty of care to ensure that users of the DraftKings platform were made aware of the material terms of the [Casino Promotion] and did not inadvertently opt into the promotion without intending to." Compl. ¶285. DraftKings has no such legal duties, nor does Youngs plead any basis for this Court to impose such duties in the first instance. *See Ayala v. Assured Lending Corp.*, 804 F. Supp. 2d 273, 284

(D.N.J. 2011) ("[G]enerally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.") (citation omitted). He certainly provides no allegations how a duty to prevent customers' "accidental" participation–if it existed (it does not)–was breached. In sum, Youngs fails to allege a legal duty and fails to plead the elements required to establish a claim of negligence, and this claim must be dismissed as a matter of law.

### 2.    The Economic Loss Doctrine Precludes the Negligence Claim.

The economic loss doctrine bars recovery for economic loss in the guise of a tort claim. *See Ayala*, 804 F. Supp. 2d at 284; *Calandrillo v. Godaddy.com, LLC*, No. A-4136-13T4, 2015 WL 2456695, at *3 (N.J. Super. Ct. App. Div. May 26, 2015).  Accordingly, Youngs' negligence claim should be dismissed.

### B.    The Court Should Dismiss the Unjust Enrichment Claim (Count 5(A)).

Youngs' unjust enrichment claim fails because it is improperly and entirely premised on allegations of tortious conduct. Specifically, Youngs alleges that DraftKings made multiple misrepresentations and engaged in deceptive conduct. Those allegations cannot support a claim for unjust enrichment.

An unjust enrichment claim cannot be based on underlying conduct that sounds in tort, including an underlying misrepresentation or concealment. *McGuire v BMW of N. Am., LLC*, No. 13-7356 (JLL), 2014 WL 2566132, at *3 (D.N.J. June 6, 2014) (granting motion to dismiss because unjust enrichment claim was based on allegation that defendants "concealed certain defects in and misrepresented the qualities and functionality of the navigation system Plaintiff purchased"); *see Giercyk v. National Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *7 (D.N.J. Dec. 4, 2015) (finding that the unjust enrichment claim failed because it rested on allegations of fraudulent misrepresentations or concealment, and therefore sounded in tort).

Youngs' unjust enrichment claim is based on allegations that (i) DraftKings made misleading misrepresentations to Youngs and putative class members "to induce them to create accounts and place bets" (Compl. ¶ 292); (ii) DraftKings implemented a "scheme . . . through a pervasive pattern of deceptive and unfair conduct" (*Id*. ¶ 293); and (iii) DraftKings was unjustly enriched as a result of "false and misleading promises" and "misleading and deceptive representations about the promotional offers." (*Id*. ¶¶ 294, 297). These allegations sound in tort and cannot give rise to an unjust enrichment claim.

### C.    The Court Should Dismiss the Conversion Claim (Count 5(B)).

Youngs' conversion claim fails because it is an improper claim to recover alleged winnings, rather than a claim for specific, identifiable money. Youngs' failure to meet his pleading requirements necessitates dismissal.

Under New Jersey law, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Vita v. Vita*, No. 21-11060 (SRC), 2022 WL 376764, at *3 (D.N.J. Feb. 8, 2022) (citation omitted). Youngs must show that the "money in question was *identifiably* [their] property *or* that [DraftKings] was obligated to *segregate* such money for [Youngs'] benefit." *Katserman v. Navahrutski*, No. 21-16531(SDW)(MAH), 2022 WL 3357900, at *7 (D.N.J. Aug. 15, 2022) (emphasis added). "New Jersey has restricted [the application of this doctrine] to avoid turning breach of contract claims into tort claims." *Vita*, 2022 WL 376764, at *3. As such, "[o]nly where there is an obligation to return the *identical money* will an action for conversion lie–it does not lie where there is merely a debtor/creditor relationship." *Id*. (emphasis added); *see also American Rubber & Metal Hose Co. v. Strahman Valves, Inc.*, No. 11-1279 (MLC), 2011 WL 3022243, at *7 (D.N.J. July 22, 2011).

Youngs does not allege a claim for the return of "identical money." Rather, he bases his

conversion claim on alleged *winnings*, in other words, monies allegedly earned after wagering his original funds. Compl. ¶ 306 ("Therefore, Plaintiff Youngs and Class Members were the rightful owners of identifiable sums of money *they had won* from wagers made either with their initial deposits or *funds attributable to wagers* made with their initial deposit") (emphasis added). These allegations cannot support a claim for conversion, causing the claim to fail as a matter of law. *Gordon v. Nice Systems, Inc.*, No. 18-2168 (ES) (CLW), 2020 WL 2316278, at *5 (D.N.J. May 11, 2020) (dismissing conversion claim based on allegation that plaintiff was "lawfully entitled to the commissions and bonuses that he earned during his performance of work for the Defendants").

## IV.    THE COURT SHOULD DISMISS DGMB AND RESORTS BECAUSE YOUNGS DOES NOT ALLEGE ANY CLAIM AGAINST THEM.

Youngs states no claims against DGMB or Resorts. In fact, at the beginning of each of his claims, he alleges the same thing: he brings the claim only "against *DraftKings*" (Compl. ¶¶ 235, 252, 272, 284, 291, 304, 328, 329), a term he specifically defined to *exclude* DGMB and Resorts. (*Id.*, pg. 1). Youngs also alleges that each of the Promotions at issue were *DraftKings'* promotions (*see, e.g.*, *Id.* ¶¶ 16, 24), he bases his claim on *DraftKings* advertising (*see, e.g.*, *id.* ¶¶ 13, 22, 25); he encloses screenshots of emails he received from *DraftKings* (*see, e.g.*, *id.* ¶ 221 Figs. 14-17); and he seeks to certify a class of *DraftKings'* customers (*id.* ¶¶ 227-29). Because he asserts no claims against DGMB or Resorts[11], the motion to dismiss should be granted in its entirety for

---

[11] Youngs only refers to DGMB in two allegations (and Resorts only in one): (i) "As of the end of November 2024, DGMB Casino LLC—through which DraftKings operates its internet casino in New Jersey—reported that it had earned almost $550 million dollars so far this year" (Compl. ¶ 9); and (ii) "Defendant DGMB Casino LLC is a company incorporated in New Jersey with its headquarters and principal place of business in Atlantic City, New Jersey. DGMB Casino is the owner and operator of Resorts Atlantic City, which has licensed to DraftKings or its subsidiary Crown NJ Gaming Inc. the right to operate a digital casino under Resorts Atlantic City's 'site' license within the state of New Jersey." (Compl. ¶ 40). Neither of those allegations are sufficient to state a claim against DGMB or Resorts.

DGMB and Resorts.

**V.      YOUNGS DOES NOT HAVE STANDING TO ASSERT CLAIMS ON BEHALF OF A NATIONWIDE OR NON-NEW JERSEY CLASS.**

Youngs' nationwide class and non-New Jersey sub-class allegations should be dismissed or stricken. This Court has routinely dismissed claims asserted on behalf of a nationwide or state class at the motion to dismiss stage on the grounds that the named plaintiff lacked standing. *See Tijerina v. Volkswagen Grp. Of Am., Inc*., No. 21-cv-18755 (BRM) (LDW), 2023 WL 6890996, at *8 (D.N.J. Oct. 19 2023); *Snowdy v. Mercedes-Benz USA, LLC*, No. 23-1681 (ES) (AME), 2024 WL 1366446, at *5 (D.N.J. Apr. 1, 2024); *McGuire*, 2014 WL 2566132, at *6. It should do so here.

Youngs seeks to represent putative class members in all 50 states to pursue state-based common law claims in fraud/intentional misrepresentation, negligence, unjust enrichment and conversion.[12] Youngs is a resident of New Jersey only (Compl. ¶ 37), and the Complaint contains no allegation that Youngs was injured under the laws of any state other than New Jersey. Youngs has no standing to assert claims on behalf of non-New Jersey residents under non-New Jersey law. *Craft v. BMW of North America, LLC*, No. 2:24-cv-06826 (WJM), 2024 WL 5197080, at *9 (D.N.J. Dec. 23, 2024) ("Plaintiff lacks standing to bring claims on behalf of a nationwide class under the laws of states where he did not reside or suffer any injury. The nationwide claims are dismissed without prejudice.").

This is an issue that should be decided now, so that the parties do not expend fees and judicial resources litigating nationwide discovery or class certification issues for claims that

---

[12] He also seeks to represent four sub-classes of residents who entered into the Casino Promotion in other states besides New Jersey (Connecticut, Pennsylvania, Michigan and West Virginia). (Compl. ¶ 227(a)-(e)).

Youngs has no standing to assert. The Third Circuit has emphasized that, "class representatives need to present a justiciable claim" *before* class certification. *Snowdy*, 2024 WL 1366446, at *6 (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 366 (3d Cir. 2015)). When determining whether to dismiss claims on these grounds, courts in this District have queried whether there is any "practical benefit to waiting to decide" a challenge to Article III standing until class certification, while highlighting the time and costs involved in permitting a named plaintiff "with no injuries in relation to the laws of certain states" (*Id.*) to embark on what would be an ultimately futile exercise of "lengthy class discovery with respect to injuries in potentially every state in the Union . . . ." *Id.* The Court would be faced at class certification with "the precise problem that the limitations of standing seek to avoid." *Id.* Accordingly, the nationwide class and non-New Jersey subclass claims should be dismissed.

## VI.    THE COURT SHOULD DENY LEAVE TO AMEND.

The Court should grant this Motion to Dismiss in its entirety and deny any leave to amend because any proposed amendment would be futile, that is, any amended complaint would fail to state a claim upon which relief could be granted. In assessing "futility," the Court applies the same standard of legal sufficiency under Rule 12(b)(6). *Holst v. Oxman,* 290 F. App'x 508, 510 (3d Cir. 2008).

The Court should deny leave to amend because Youngs cannot amend the Complaint in a manner that could save his claims. Counts 1, 2, 6, and 7 cannot be remedied because they are preempted by the CFA, and the promotions at issue do not constitute "merchandise," a threshold requirement for a claim under the CFA. Further, Youngs cannot amend to adequately plead those same claims or his intentional misrepresentation claim because they are all premised on the alleged omission of the very information that is disclosed in the relevant promotional terms. Thus, the Promotions' terms conclusively defeat Counts 1, 2, 3, 6, and 7. Moreover, Youngs cannot cure the

fatal defects in his claim for negligence (Count 4), his claim for unjust enrichment (Count 5(A) and conversion (Count 5(B)).

## **CONCLUSION**

The Court should grant Defendants' Motion to Dismiss and dismiss each and every claim in the Complaint without leave to amend.

Dated: March 27, 2025                    Respectfully submitted,



CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO

JOHN M. AGNELLO

James E. Cecchi
Melissa E. Flax
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY &
AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
jagnello@carellabyrne.com
jcecchi@carellabyrne.com
mflax@carellabyrne.com

Richard R. Patch, (*pro hac vice forthcoming*)
Clifford E. Yin, (*pro hac vice forthcoming*)
Christopher J. Wiener, (*pro hac vice forthcoming*)
Sarah E. Peterson, (*pro hac vice forthcoming*)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
Email: ef-rrp@cpdb.com
        ef-cey@cpdb.com
        ef-cjw@cpdb.com
        ef-sep@cpdb.com