**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

John M. Agnello, Esq.
Melissa E. Flax, Esq.
James E. Cecchi, Esq.
CARELLA, BYRNE, CECCHI,
 BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Email:  jagnello@carellabyrne.com
        mflax@carellabyrne.com
        jcecchi@carellabyrne.com

Richard R. Patch *(pro hac vice)*
Clifford E. Yin *(pro hac vice)*
Christopher J. Wiener *(pro hac vice)*
Sarah E. Peterson *(pro hac vice)*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: 415-391-4800
Facsimile: 415-989-1663
Email:  ef-rrp@cpdb.com
        ef-cey@cpdb.com
        ef-cjw@cpdb.com
        ef-sep@cpdb.com

| | |
|---|---|
| MATTHEW YOUNGS and CHARLES THOMPSON, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>DRAFTKINGS INC. and CROWN NJ GAMING INC. d/b/a DRAFTKINGS,<br><br>          Defendants. | Civil Action No. 2:25-cv-00179-SRC-JRA |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO PHASE DISCOVERY**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...............................................................................................................1

II.  ARGUMENT .....................................................................................................................2

A.   Phasing of Discovery Is Routine In This District. .............................................................2

B.   The Additional Merits Discovery Sought By Plaintiffs Exceeds What Is Relevant To Class Certification. ........................................................................................................5

    1.   *"Internal data" regarding "class member behavior" in response to DraftKings' advertisements is not relevant to class certification.* ..........................6

    2.   *"Data regarding the failure rates for the promotions" is not relevant to class certification.* .................................................................................................9

    3.   *Discovery concerning knowledge and intent is not relevant to class certification…...* .............................................................................................10

C.   Phasing Discovery Will Avoid Protracted Discovery Disputes. ......................................11

III. CONCLUSION ................................................................................................................12

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Antar v. BetMGM, LLC*,
   No. 24-1364, 2025 WL 1219316 (3d Cir. Apr. 28, 2025) ........................................................9

*Bell v. Lockheed Martin Corp.*,
   270 F.R.D. 186 (D.N.J. 2010) ........................................................................................1, 2, 4

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   627 F. Supp. 2d 384 (D.N.J. 2009) ........................................................................................8

*Conner v. Perdue Farms, Inc.*,
   No. 11-888 (MAS) (LHG), 2013 WL 5977361 (D.N.J. Nov. 7, 2013) ........................2, 3, 4, 7

*Elias v. Ungar's Food Products, Inc.*,
   252 F.R.D. 233 (D.N.J. 2008) ..............................................................................................11

*Brown ex rel. Est. of Brown v. Philip Morris Inc.*,
   228 F. Supp. 2d 506 (D.N.J. 2002) ......................................................................................10

*Hakimoglu v. Trump Taj Mahal Assocs.*,
   70 F.3d 291 (3d Cir. 1995) ....................................................................................................9

*Hammer v. Vital Pharms., Inc.*,
   No. 11-4124 (MAS) (DEA), 2015 WL 12844442 (D.N.J. Mar. 31, 2015) ...............................7

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008), *as amended* (Jan. 16, 2009) .....................................................5

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ...........................................................................................8

*MacLean v. Wipro Ltd.*,
   No. 20-03414 (GC)(JBD), 2023 WL 3742832 (D.N.J. May 31, 2023) ...............................2, 4

*Marcus v. BMW of N. Am. LLC*,
   687 F.3d 583 (3d Cir. 2012) .......................................................................................7, 9, 10

*Nazario v. Sharinn & Linshie, P.C.*,
   No. 2:19-cv-04604 (SDW)(SCM), 2020 WL 205896 (D.N.J. Jan. 14, 2020) ..........................3

*Newborn Bros. Co. v. Albion Eng'g Co.*,
   481 F. Supp. 3d 312 (D.N.J. 2020) ........................................................................................8

*In re Riddell Concussion Reduction Litig.*,
   No. 13-7585 (JBS/JS), 2016 WL 4119807 (D.N.J. July 7, 2016) .........................................2, 4

*Tonglu Rising Sun Shoes Co. v. Nat. Nine (USA) Co.*,
   No. 14-1634 (SRC)(CLW), 2016 WL 7374543 (D.N.J. Dec. 20, 2016) .................................10

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   752 A.2d 807 (N.J. Super. Ct. App. Div. 2000) ..................................................................7, 10

*Wesley v. Samsung Elecs. Am., Inc.*,
   No. 20-18629 (JMV)(AME), 2022 WL 2870200 (D.N.J. July 21, 2022) .................................4

**Statutes & Rules**

Fed. R. Civ. P. Rule 23 ................................................................................................... *passim*

Fed. R. Civ. P. Rule 23(a) .........................................................................................................5

Fed. R. Civ. P. Rule 23(a)(1) ....................................................................................................5

Fed. R. Civ. P. Rule 23(b) .........................................................................................................5

Fed. R. Civ. P. Rule 23(b)(3) ....................................................................................................7

Fed. R. Civ. P. Rule 23(c)(1)(A) .......................................................................................2, 4, 5

Fed. R. Civ. P. Rule 26(b)(1) ................................................................................................2, 5

I.      **INTRODUCTION**

Consistent with the Federal Rules of Civil Procedure and caselaw from this District that provides that discovery at the certification stage should prioritize certification-related issues[1], DraftKings filed its Motion to Phase Discovery (the "Motion") (D.E. 72, 72-1). Both the forty-five requests for production ("Requests") served by the two named plaintiffs ("Plaintiffs") and their opposition to the Motion (the "Opposition") (D.E. 77) confirm that phasing discovery is not only sensible but *necessary* for discovery to proceed in an orderly fashion and to minimize potential discovery disputes.

The unnecessarily broad scope of Plaintiffs' Requests and the theme of the Opposition make clear that Plaintiffs want to prematurely proceed with class and merits discovery with *no pre-certification parameters at all.* The Requests seek, among other things, expansive merits discovery into issues of alleged fault, liability, and damages, as well as discovery concerning the identity and gaming specifics of all of the putative class members on a nationwide basis. Such discovery is plainly premature where, as here, no class has been defined[2] or certified.

Plaintiffs' assertion that class and merits discovery must proceed simultaneously because they are "inextricably intertwined" lacks merit. D.E. 77 at 12. First, the original discovery schedule that Plaintiffs themselves proposed contemplated phased discovery. And second, the scope of the discovery they seek is irrelevant to an appropriate Rule 23 inquiry (and in some

---

[1] *See* Fed. R. Civ. P. 23 ("Rule 23") advisory committee's note to 2003 amendment ("[i]t is appropriate to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis."); *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 199 (D.N.J. 2010) ("all discovery related to class certification should be conducted first," and merits discovery deferred to a later stage).

[2] Among other things, the class definitions proposed in the Second Amended Complaint are overbroad and, in particular, do not reflect Plaintiffs' concession that the Promotions could only have misled, at most, first-time participants. D.E. 48, Hrg. Tr. 49:9-12.

1

instances, even to the merits of Plaintiffs' claims) and would impose burdens disproportionate to the needs of the case at the pre-certification stage.

Plaintiffs' attempt to bolster their argument for expansive and unlimited discovery now—by overstating and outright misstating DraftKings' position—should fail. DraftKings is not seeking to "stay" merits discovery. It is asking the Court to phase discovery so that there are clear guidelines as to what discovery is proportionate and appropriate before class certification is decided. *Conner v. Perdue Farms, Inc.*, No. 11-888 (MAS) (LHG), 2013 WL 5977361, at *3 (D.N.J. Nov. 7, 2013). Phasing discovery in this manner is consistent with Rule 26(b)(1)'s requirement that discovery be "proportional to the needs of the case," because, at the pre-certification stage, the "needs of the case" are defined principally by Rule 23. It is also consistent with Rule 23(c)(1)(A)'s direction that courts determine class certification "[a]t an early practicable time[.]" Phasing discovery to prioritize certification issues and merits issues with respect to the two Plaintiffs (the only parties currently before the Court) gives effect to that mandate by enabling the Court to resolve certification *before* the parties incur the expense of full merits discovery.

## II.     ARGUMENT

### A.     Phasing of Discovery Is Routine In This District.

Plaintiffs devote much of their brief attacking a straw man argument. They allege that phasing discovery is unusual and routinely rejected and that DraftKings is seeking to postpone all merits discovery. Neither is true. Courts have made clear that phased discovery is routine precisely in the manner sought by DraftKings. *See* D.E. 72-1 at 4-5.[3] Moreover, DraftKings has

---

[3] *See MacLean v. Wipro Ltd.*, No. 20-03414 (GC)(JBD), 2023 WL 3742832, at *2 (D.N.J. May 31, 2023) ("Accordingly, in putative class actions, courts in this District—whether they formally bifurcate or not—*often* focus discovery first on class certification and then on the merits") (emphasis added); *Conner*, 2013 WL 5977361, at *7; *Bell*, 270 F.R.D. at 199; *In re Riddell*

2

specifically made clear that merits-discovery on the Plaintiffs' claims as class representatives may proceed first, also an approach adopted by courts in this District.[4] DraftKings has only proposed that broad merits discovery – including discovery addressing knowledge, intent and class-wide damages, as well as discovery concerning absent class members – proceed only if and when a class is certified. Indeed, Plaintiffs' own timetable provided for discovery to continue for four months *after* the motion for class certification was filed.

Plaintiffs also ignore on-point New Jersey case law cited in the Motion, including *Conner*. Plaintiffs attempt to distinguish *Conner* by asserting that the defendant in that case (Perdue Farms) limited the arguments it would raise at class certification, suggesting that bifurcation there was appropriate only because the defendant effectively narrowed its merits defenses. But *Conner* did not turn on a waiver of defenses; it turned on sequencing and efficiency—whether Rule 23 issues should be addressed before full merits discovery. *Conner*, 2013 WL 5977361, at *7. The Court concluded that phased discovery would promote orderly adjudication of Rule 23 issues without requiring immediate, expansive merits discovery. Plaintiffs' narrow reading of *Conner* would effectively make phased discovery permissible only where a defendant agrees to limit its merits arguments at certification. That is not and cannot be the rule. Courts routinely sequence discovery to prioritize Rule 23 issues even where defendants fully preserve their merits defenses. The relevant question is not whether DraftKings will contest

---

*Concussion Reduction Litig.*, No. 13-7585 (JBS/JS), 2016 WL 4119807, at *2 (D.N.J. July 7, 2016).
[4] *See, e.g.*, *Nazario v. Sharinn & Linshie, P.C.*, No. 2:19-cv-04604 (SDW)(SCM), 2020 WL 205896, at *2 (D.N.J. Jan. 14, 2020) (granting an "informal motion" to allow discovery to proceed on the merits of the named plaintiff's claims and class certification but deferring class merits discovery until a decision on certification).

the merits, but whether full nationwide merits discovery is necessary before the Court determines whether any class will be certified. Rule 23(c)(1)(A) answers that question in the negative.

Furthermore, *Conner* and the cases cited by DraftKings in its opening brief all reflect the general principle that phasing is accepted in this District and is typically only rejected for one of two reasons:

(i) a formal order is deemed unnecessary because the parties agreed – or the court had directed informally – that discovery will initially prioritize certification issues. *See* D.E. 72-1 at 5; *see also Bell,* 270 F.R.D. at 199; *In re Riddell Concussion Reduction Litig.*, 2016 WL 4119807, at *2; or

(ii) the defendants sought to prioritize merits discovery as to plaintiffs while deferring class certification (and all class certification discovery) until after early resolution of a dispositive motion. *See* D.E. 72-1 at 5, n.2; *see also Wesley v. Samsung Elecs. Am., Inc.,* No. 20-18629 (JMV)(AME), 2022 WL 2870200, at *3 (D.N.J. July 21, 2022); *MacLean*, 2023 WL 3742832, at *2. DraftKings is proposing the opposite: to prioritize class certification.

Plaintiffs also assert, incorrectly, that DraftKings has unilaterally stayed nationwide discovery. D.E. 77 at 1, n.1. DraftKings has agreed to produce advertisements disseminated through nationwide campaigns, as well as New Jersey-specific campaigns. *See* D.E. 77-2 at pp. 18-19, 43-44 (DraftKings' Responses and Objections to Plaintiffs' Requests ("RFP Responses"), served on Feb. 9, 2026, RFP Responses Nos. 4 and 19). DraftKings objected to Requests that seek discovery concerning advertisements specifically geotargeted to states other than New Jersey (and therefore, *advertisements that neither Plaintiff nor anyone in New Jersey would ever have seen*) or concerning *all* users, without limitation. *See* D.E. 77-2 at pp. 18-19, 21-24, 27-30, 43-44, 48-50, 52-54, 66-67, 79-86 (RFP Responses Nos. 4, 6-7, 9-10, 19, 22, 32, 41-44).

Moreover, Plaintiffs have conceded that the advertisements at issue could have misled, at most, only first-time participants in the Promotions. D.E. 48, Hrg. Tr. 49:9-12. Their Requests, however, go *far* beyond such first-time participants.

DraftKings' proposal to phase discovery is not categorical; it is practical. In Phase 1, discovery would focus on materials necessary to adjudicate Rule 23 issues, including the advertisements and promotional terms disseminated to individuals in New Jersey during the relevant period, and the two Plaintiffs' account-level data. If—and only if—a class is certified, Phase 2 would permit broader merits discovery tailored to whatever class, if any, is certified. This staged approach gives effect to Rule 23(c)(1)(A)'s directive to decide certification at an early practicable time while ensuring that discovery remains proportional under Rule 26(b)(1).

**B.     The Additional Merits Discovery Sought By Plaintiffs Exceeds What Is Relevant To Class Certification.**

Plaintiffs take the untenable position in the Opposition that DraftKings must produce full merits discovery as to *all* potential class members and *all* liability issues before class certification.[5] The fact that certification analysis may overlap with the merits does not entitle Plaintiffs to *full* nationwide merits discovery before certification; rather, it permits discovery only to the extent necessary to resolve Rule 23 elements.

Plaintiffs improperly contend they need three categories of discovery to establish entitlement to class certification: (i) internal data regarding class member behavior; (ii) data regarding what they call the "failure rates" for the Promotions; and (iii) internal data concerning

---

[5] At the class certification stage, the Court will need to determine by a preponderance of the evidence that the requirements of Rules 23(a) and (b) are satisfied, not resolve the full merits of Plaintiffs' claims. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008), *as amended* (Jan. 16, 2009). DraftKings confirmed in its RFP Responses that it does not dispute that the numerosity requirement (Rule 23(a)(1)) is satisfied with respect to the putative New Jersey classes for the purposes of class certification. *See* D.E. 77-2 at pp. 30, 54, 81 and 83, RFP Responses Nos. 10, 24, 41, 42.

5

the "knowledge and intent" of the Promotions. But those abstract categories[6] have minimal, if any, relevance to class certification and to the merits of the Plaintiffs' remaining claims: The three remaining claims are an equitable fraud claim related to the Casino Deposit Match Rollover Promotion and statutory consumer fraud ("CFA"), and common law fraud claims related to the "Risk-Free Bet" Promotion. Each of those claims contain distinct elements that give rise to distinct putative classes that, in the Opposition, Plaintiffs do not address.[7] We address each of the three categories in turn.

### 1. *"Internal data" regarding "class member behavior" in response to DraftKings' advertisements is not relevant to class certification.*

Plaintiffs' assertion that this data is relevant to "commonality and predominance" (D.E. 77 at 4-5) and necessary for their expert to develop a methodology to isolate "the effect of the deceptive statements from other inputs on class members' behavior[s]" is incorrect. *Id*. at 5.

Plaintiffs overstate the application of a causation presumption. Plaintiffs assert that this data is necessary to invoke such a presumption under the CFA, under which the Court may presume class-wide causation if "the plaintiff can show that class members reacted to the truth, if knowable, in a uniform manner." *Id*. at 4; citing *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 352 (D.N.J. 2019). However, this presumption is relevant only in narrow circumstances inapplicable here: where the truth behind the defendant's representations is unknowable by class

---

[6] Plaintiffs fail to identify which specific Requests correspond to those categories, leaving DraftKings (and the Court) to speculate as to what discovery is purportedly necessary for class certification.

[7] Instead, Plaintiffs repeatedly mischaracterize their equitable fraud claim as a common law fraud claim. *See* D.E. 77 at 7, 10; *see also* D.E. 65 at pp. 20 (order on DraftKings' Motion to Dismiss, whereby the Court converted the pleaded common law fraud claim to an equitable fraud claim). Plaintiffs' sweeping and ill-conceived approach to discovery is also underscored by the numerous Requests seeking documents related to the "No Sweat" Promotion (s*ee e.g.* D.E. 72-2 at pp. 10-11; Request Nos. 16-29), even though the Court dismissed all claims concerning that Promotion. D.E. 65 at pp.23.

members, and it is "inconceivable" that more than a very small number of class members would have purchased the product anyway. *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 610–12 (3d Cir. 2012) (distinguishing *Varacallo v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807 (N.J. Super. Ct. App. Div. 2000)). This presumption applies only after the Court analyzes predominance under Rule 23(b)(3), including whether plaintiffs could have known the truth underlying the alleged fraud. *Marcus*, 687 F.3d at 610; *see also Hammer v. Vital Pharms., Inc.*, No. 11-4124 (MAS) (DEA), 2015 WL 12844442, at *7–8 (D.N.J. Mar. 31, 2015) ("[A] presumption of causation is not a substitute for [the Court's analysis of the predominance] requirement under Rule 23.").

Even if Plaintiffs are permitted by the Court to invoke this presumption with respect to the CFA claim at class certification (and they should not be), Plaintiffs do not and cannot explain how data regarding who signed-up, deposit amounts, or "promotional success or failure" demonstrates that class members reacted uniformly. *See, e.g.*, D.E. 7 at pp. 8-9, 10-13, Request Nos. 6-7, 9-10, 22, 32, 41-44.[8] At most, it shows that class members participated in a Promotion—the bare minimum requirement to qualify as a class member. Furthermore, Plaintiffs must show that the advertisements and Promotions at issue had the capacity to mislead the average customer. *Conner*, 2013 WL 5977361, at *6. What matters, therefore, is how those "average" customers could have uniformly understood the statements in the advertisements and Promotions *based on the language itself. Id*. Indeed, the Court in *Conner* rejected the very argument advanced by Plaintiffs. *Id*. at *5. ("Plaintiffs contend that they cannot seek to certify a class without the ability to create a closed-ended survey that compares the challenged advertising

---

[8] To the extent Plaintiffs seek "Consumer outcome data" (D.E. 77-1; Declaration of Dr. Bruce Carlin ("Carlin Decl.") ¶ 3b) beyond a user's first-time participation in a Promotion (*See, e.g.*, D.E. 72-2 at pp. 8-9, 10-13, Request Nos. 6-7, 9-10, 22, 32, 41-44), that exceeds the conceded scope of their claims (D.E. 48, Hrg. Tr. 49:9-12) and is indicative of the overbroad approach that Plaintiffs have adopted.

7

with Perdue's actual chicken-raising practices . . . *The Court does not agree with Plaintiff's assessment of what is needed at the class certification stage in this matter.*") (emphasis added).

Plaintiffs also generalize that internal data is "frequently used" to show that an advertising message had a common effect on the class. D.E. 77 at 4. The sole out-of-district case that they cite in support – *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 524–25 (E.D.N.Y. 2017) – is inapposite. That case did not concern whether internal data was relevant to class certification; the "consumer transaction data" at issue instead was relevant to one expert's critique of a damages model as "critically flawed". *Id*. Plaintiffs do not explain why their expert must rely on nationwide user-level data rather than surveys,[9] aggregated data, sampling, or New Jersey–specific data. Rule 23 does not entitle Plaintiffs to the most convenient form of discovery—only proportional discovery.[10]

Finally, Plaintiffs' request for nationwide "class member behavior" data utterly ignores the unnecessary burden associated with producing such data. As the Court indicated, "It is certainly possible that the class will need to be narrowed to consist only of those individuals who placed bets in or were residents of New Jersey[.]" D.E. 65 at 23. Given the Court's statements, that issue should be resolved before DraftKings is required to produce nationwide user data. Plaintiffs must first be required to demonstrate a viable, ascertainable class definition, and that

---

[9] Indeed, consumer surveys are frequently used as a means of proving deception in Lanham Act claims for false advertising. *See Bracco*, 627 F. Supp. 2d at 440; *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 353 (D.N.J. 2020).

[10] *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 441 (D.N.J. 2009) does not assist Plaintiffs. *See* D.E. 77 at 5. *Bracco* concerned the admissibility of expert testimony at trial, not the scope of discovery necessary to support a class certification motion. The court excluded an expert's opinion as unreliable; it did not identify what *discovery* would be required to make his analysis reliable. *Bracco*, 627 F. Supp. 2d at 441.

nationwide certification is legally viable. Forcing DraftKings to engage in nationwide merits discovery now is premature.

### 2. *"Data regarding the failure rates for the promotions" is not relevant to class certification.*

Plaintiffs also contend that they require "failure rate[]" data because it would show the risks were so high that few users would have participated had the risks been disclosed. D.E. 77 at 6. But "failure rate" data in this context neither indicates reliance nor deceptiveness. It is simply gaming loss data. The amounts won or lost by the nationwide population of DraftKings' customers do not measure the alleged risk of the Promotions at issue, nor do those amounts prove the alleged causation. Gaming losses are the "natural result of [gaming]." *Antar v. BetMGM, LLC*, No. 24-1364, 2025 WL 1219316, at *3 (3d Cir. Apr. 28, 2025). The Third Circuit has observed that efforts to attribute such gaming losses as damages "present almost metaphysical problems of proximate causation[.]" *Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 294 (3d Cir. 1995). In short, "failure rate" information is not relevant to whether any individual user was aware or unaware of the alleged risks, relied on any alleged misrepresentations, or would have behaved differently had they known the supposed allegedly true facts.

Plaintiffs again rely on the causation presumption discussed above to argue that this data is relevant. For the reasons discussed in Section II.B.1, that argument is misplaced. Plaintiffs go even further, however, and attempt to extend what is, at most, a limited CFA-specific presumption to their fraud claims. D.E. 77 at 6. That argument is not supported by federal case law. In *Marcus*, the Third Circuit did not suggest that the presumption extends beyond the CFA and certainly did not state that a presumption can be used to establish reliance by a nationwide

class for common law or equitable fraud claims.[11] Plaintiffs treat the claims as if they rise or fall together, but Rule 23 analysis must be conducted claim-by-claim and class-by-class.

### 3. *Discovery concerning knowledge and intent is not relevant to class certification.*

Plaintiffs also seek discovery regarding DraftKings' knowledge and intent in designing the Promotions, asserting that it is relevant to proving reliance. D.E. 77 at 6. That argument is likewise without merit for several reasons.

First, evidence of scienter is not required for an equitable fraud claim, the only remaining claim related to the Casino Deposit Match Rollover Promotion. *Tonglu Rising Sun Shoes Co. v. Nat. Nine (USA) Co*., No. 14-1634 (SRC)(CLW), 2016 WL 7374543, at *3 (D.N.J. Dec. 20, 2016). Thus, discovery into such scienter with respect to that Promotion is irrelevant, both to class certification and to the merits of that claim. Nevertheless, Plaintiffs ignore this distinction; their Requests for both Promotions are near-identical. *See, e.g.*, D.E. 72-2 at pp. 8, 10; Request Nos. 6 and 21. Plaintiffs made no effort to tailor discovery to the scope of their surviving claims or to account for the differences in those claims in the Opposition.

Second, Plaintiffs cannot rely on an "indirect reliance" theory to justify pre-certification discovery for either fraud claim. Plaintiffs rely on *Varacallo*, 752 A.2d 807, but the *Varacallo* court's statements on indirect reliance "relie[d] on and discusse[d] the reversed decision of the Appellate Division [Court] in *Kaufman*, and that reliance calls into question the foundation of the *Varacallo* opinion." *See Brown ex rel. Est. of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 520 n.14 (D.N.J. 2002) (noting that, in any event, the question before the *Varacallo* court was "narrow"). Plaintiffs have not identified a single federal case that applies any so-called "indirect

---

[11] Without such authority, there are no grounds for the Court to apply this 'presumption' here. As the Third Circuit has emphasized, federal courts "decide the legal standards that Rule 23 requires as a matter of federal law." *Marcus*, 687 F.3d at 608.

10

reliance" presumption to satisfy Rule 23's predominance requirement to a common law or equitable fraud claim.[12]

### C. Phasing Discovery Will Avoid Protracted Discovery Disputes.

The Requests highlight why phased discovery is necessary, and why a reasoned, rational approach to the limits of pre-certification discovery would be beneficial to all parties and the Court. Plaintiffs have propounded sweeping Requests that demand full merits discovery, without attempting to distinguish between what is necessary to the Rule 23 inquiry and what relates to ultimate liability. Plaintiffs argue that DraftKings is "free to object" to those Requests (which it has already done). But the phased discovery approach proposed by DraftKings imposes a clear framework that will better enable the parties to have meaningful meet and confer discussions and to minimize motion practice.

The phasing that DraftKings proposes reflects a measured effort to sequence discovery around what is actually required for class certification purposes under Rule 23 and equally acknowledges the appropriateness of merits discovery on the Plaintiffs to the extent relevant to class certification. D.E. 72-1 at 5-7. If Plaintiffs disagree with that framework, they had the opportunity in the Opposition to identify which of their 45 Requests are genuinely relevant to Rule 23. They did not do so. They asserted that "most" of the Requests seek discovery relevant to class and merits (D.E. 77 at 3), thus conceding that some of them seek exclusively merits discovery.

---

[12] While Plaintiffs cite *Elias v. Ungar's Food Products, Inc.* (D.E. 77 at 6), the court applied the CFA-specific causation presumption discussed in Section II.B.1 to a CFA claim only. The court did not extend the presumption to common law or equitable fraud. To the contrary, the court denied certification of the common law fraud claim without adopting, or even discussing, any theory of indirect reliance. 252 F.R.D. 233, 237–38 (D.N.J. 2008).

### III. CONCLUSION

For the foregoing reasons, the Court should phase discovery in this case.

Dated: February 17, 2026

Respectfully submitted,



_____
John M. Agnello
James E. Cecchi
Melissa E. Flax
CARELLA, BYRNE, CECCHI, BRODY &
AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
jagnello@carellabyrne.com
jcecchi@carellabyrne.com
mflax@carellabyrne.com

Richard R. Patch, (*pro hac vice*)
Clifford E. Yin, (*pro hac vice*)
Christopher J. Wiener, (*pro hac vice*)
Sarah E. Peterson, (*pro hac vice*)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
Email: ef-rrp@cpdb.com
          ef-cey@cpdb.com
          ef-cjw@cpdb.com
          ef-sep@cpdb.com